# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 22-CR-2019 CJW-MAR |
| vs. | **ORDER** |
| HOUSTON SIMMONS, III, | |
| Defendant. | |

This matter is before the Court on defendant's Objections (Doc. 46) to the Report and Recommendation (Doc. 45) of the Honorable Mark A. Roberts, United States Magistrate Judge. On May 20, 2022, defendant filed a Motion to Suppress. (Doc. 35). The government timely filed a resistance. (Doc. 38). Defendant timely filed a reply. (Doc. 40). On June 10, 2022, Judge Roberts held a hearing on the motion. (Doc. 43). On June 27, 2022, Judge Roberts issued his Report and Recommendation, which recommends that the Court deny the Motion to Suppress. (Doc. 45). On July 11, 2022, defendant timely filed his Objections. (Doc. 46). For the following reasons, the Court **overrules** defendant's Objections, **adopts** Judge Roberts' Report and Recommendation, and **denies** the Motion to Suppress.

## I. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) ("[A district judge must] undertake[ ] a de novo review of the disputed portions of a magistrate

judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

## II.   *FACTUAL BACKGROUND*[1]

On September 5, 2021, Waterloo Police Department ("WPD") Officer Amira Ehlers received a text from the owner of Flirt's Gentlemen's Club ("Flirt's") alerting her that there were two men smoking and drinking in a vehicle in front of the club. (Doc. 47, at 2; Def. Ex. F). Officer Ehlers responded to the text by asking for a description of the car but began to drive to Flirt's before receiving a response. (Doc. 47, at 2, 7; Def. Ex. F). She did not see the owner's response until sometime after she spoke with him. (Doc. 47, at 2).

Officer Ehlers parked in the lane of traffic near Flirt's entrance. On the passenger side of her squad car and to its front, a blue sport utility vehicle ("SUV") was parked at the curb near Flirt's entrance where the owner was standing. (Gov. Ex. 3). Officer Ehlers activated her squad car's amber warning lights, got out of her car, and spoke with Flirt's owner to find out which vehicle he was concerned about. (Doc. 47, at 3;

---

[1] After reviewing the Hearing Transcript (Doc. 47), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation. The Court thus adopts Judge Roberts' summary of the facts here. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

2

Case 6:22-cr-02019-CJW-MAR   Document 48   Filed 08/15/22   Page 2 of 12

Gov. Ex. 1 Ehlers' BWC at 1:08:11). He pointed out a blue Kia sedan ("the Kia"). (Doc. 47, at 3).

Meanwhile, WPD Sergeant Spencer Gann responded to Officer Ehlers' call for assistance and began to drive to Flirt's. (Gov. Ex. 2 Gann's BWC at 1:07:23–1:07:30). Upon arriving at Flirt's, Sergeant Gann pulled up and parked in the lane of traffic behind Officer Ehlers' squad car. (*Id.* at 1:08:15-1:08:19). Along the passenger side of Sergeant Gann's squad car, the Kia was parked at the curb. (Gov. Ex. 3). Sergeant Gann got out of his squad car and asked Officer Ehlers which vehicle they were approaching. (Doc. 47, at 9; Gov. Ex. 1 Ehlers' BWC at 1:08:18). She informed him it was the Kia he was parked next to. He replied, "This one here? Oh." (Gov. Ex. 2 Gann BWC at 1:08:21–1:08:24).

In front of the Kia was an empty parking space along the curb, large enough to accommodate another vehicle. (Gov. Ex. 3). In front of that empty space was the blue SUV. (*Id.*). Officer Ehlers' squad car was parked in the street adjacent to this space. (*Id.*). In other words, directly to the side of her squad car was an empty parking space. To the right rear side of her car was the Kia. Officer Ehlers' squad car was parked in relation to the blue SUV such that the Kia could not have pulled forward and out into the street. The space behind the Kia was the open entrance of a driveway to a parking lot. (Gov. Exs. 1 Ehlers' BWC at 1:08:47-1:08:51; 2 Gann's BWC at 1:08:25-1:08:35; 4; 5). Thus, the area immediately behind the Kia was open to the street and the driveway. (Gov. Ex. 5). In other words, there were no cars parked immediately behind the Kia. The parking lot entrance was immediately behind the Kia. In short, the cars were parked in such a manner that the Kia could have backed up and then proceeded forward into the street and past the parked squad cars, or could have backed into the driveway of the parking lot and turned to drive in the opposite direction from the squad cars.

3

Defendant and the Kia's driver were seated in the Kia when the police arrived. (Gov. Ex. 1 Ehlers' BWC at 1:08:11). Defendant was seated in the front passenger seat. Officer Ehlers approached the Kia's driver on the driver's side and explained to him there had been a complaint and informed him she smelled marijuana coming from his car. (Gov. Ex. 1 Ehlers' BWC at 1:08:34–1:09:02). She explained to the Kia's driver that "your entire car smells like there's pounds of weed in it." (*Id.* at 1:09:42.) She ordered him out of the car and searched him. (*Id.* at 1:10:39-1:11:00). She then searched the vehicle. (*Id.* at 1:11:45–1:13:48). At the same time, Sergeant Gann went around the back of his squad car and the back of the Kia to stand at its passenger door. (Gov. Ex. 2 Gann's BWC at 1:08:25–1:08:35). Once Officer Ehlers decided to do a search, Sergeant Gann ordered defendant out of the vehicle and searched him. (*Id.* at 1:11:06–1:11-35). He observed defendant and the Kia's driver while Officer Ehlers searched the vehicle. (*Id.* at 1:11:48–1:13:59). The search uncovered marijuana, U.S. currency, a Taurus G2C9mm semi-automatic handgun, a burnt marijuana roach, a vacuum sealer, a vacuum sealer bag containing marijuana, documents regarding defendant, defendant's three cell phones, and money on defendant's person. (Docs. 47, at 5; 35-2 at 1–2). Defendant and the Kia's driver were placed under arrest.

### III. ANALYSIS

In the Motion to Suppress, defendant argues that the officers seized the Kia and defendant, who was a passenger in the Kia, "when officers used their marked squad cars to block in the Kia . . . before officers had reasonable suspicion or probable cause to seize" defendant or the Kia. (Doc. 35, at 1; *see also* Doc. 35-2 (inventory)).

In his Report and Recommendation, Judge Roberts recommended that the Court deny defendant's motion. (Doc. 45). Judge Roberts found the officers did not block in the Kia with their cars and neither defendant nor the Kia was seized by the way the officers parked their cars. (*Id.*, at 7-10). Judge Roberts also found the officers did not

4

park their cars with the intent to seize the Kia because neither Officer Ehlers nor Sergeant Gann knew which vehicle outside Flirt's was the one at issue. (*Id.*, at 10–13). Finally, Judge Roberts found a reasonable person in the position of either the Kia's driver or defendant, the Kia's passenger, would have felt they were free to leave. (*Id.*, at 13–15).

Defendant objects to four conclusions in Judge Roberts' Report and Recommendation: (1) that the Kia in which defendant was a passenger was not blocked in after Sergeant Gann parked his squad car; (2) that the Kia and defendant were not seized when Officer Ehlers and Sergeant Gann parked their squad cars near the Kia; (3) that it is legally relevant that the officers intended to seize the Kia and defendant, as opposed to merely actually seizing both; and (4) that a reasonable person in the position of either the Kia's driver or defendant would have felt free to leave. (Doc. 46). The Court addresses each objection in turn.

### A. *The Position of the Vehicles*

Defendant argues the squad cars blocked the Kia in such a way that the car could not readily leave the scene. (Doc. 46-1, at 1–2). Specifically, defendant points to a vehicle parked in front of the Kia, Officer Ehlers' car next to the Kia, and Sergeant Gann's car behind the Kia.[2] (*Id.*).

Viewing the officers' body-worn camera footage and photographic evidence offered by the government, Judge Roberts found the Kia was not blocked in because it had room to back up and leave, either by "back[ing] straight along the curb or into the

---

[2] Defendant also implies that the nature of the stop adds to the determination of whether the Kia was blocked in. (*See* Doc. 46-1, at 2). Specifically, defendant notes "[b]oth officers were in marked police cars, in uniform, and armed" and "[a]t least Officer Ehlers had flashing lights on." (*Id.*). Defendant argues the difference between amber flashing lights used by Officer Ehlers and other types of lights used by police is irrelevant because there is no evidence defendant or the Kia's driver knew what lights indicated what kind of stop. (*Id.*). The Court does not find these facts relevant to determine whether the Kia was blocked in.

5

adjoining driveway." (Doc. 45, at 7–8). The Court agrees with Judge Roberts' conclusion. Although the officers' cars were close to the Kia, they were not so close that the Kia could not leave. (Gov't Exs. 1 Ehlers' BWC at 1:08:47–1:08:51; 2 Gann's BWC at 1:08:25–1:08:35; 4; 5). Thus, the Court finds the Kia was not blocked in.

Accordingly, defendant's objection is **overruled**.

### B.     *Whether Defendant was Seized by the Officers' Cars*

Defendant argues that because the Kia was blocked in by the officers, the Kia and defendant were seized. (Doc. 46-1, at 2–3). In support, defendant cites several cases concluding that a seizure occurs "when an officer uses their squad car to block the vehicle and prevent the occupants from leaving the scene." (*Id.*).

Having found the Kia was not blocked in, Judge Roberts "conclude[d] that the officers did not seize the Kia by the placement of their vehicles."[3] (Doc. 45, at 8). Because the Court has already found the Kia was not blocked in, the Court also finds officers did not seize the Kia and defendant by blocking the car in.

Accordingly, defendant's objection is **overruled**.

### C.     *The Relevance of the Officers' Subjective Intent*

Citing *Brower v. County of Inyo*, 489 U.S. 593 (1989), defendant argues officers seized defendant by the means they intentionally applied—that is, they seized defendant by intentionally parking their squad cars in a way that blocked in the Kia, and thus defendant. (Doc. 46-1, at 3–7). But, defendant argues there is no requirement of "proof that Officer Ehlers and Sergeant Gann intended to specifically seize [defendant.]" (*Id.*, at 5 (citing *Brower*, 489 U.S. at 596 ("[A] seizure occurs even when an unintended person

---

[3] Judge Roberts found no seizure occurred prior to Officer Ehlers detecting the smell of marijuana. (Doc. 45, at 8–10). Defendant, however, specifically bases his objections on the manner in which the officers parked their cars and allegedly blocked in the Kia. (Doc. 46-1, at 3–7).

6

or thing is the object of the detention or taking.")). Instead, defendant argues, the relevant question is whether the officer intended to apply the means of a seizure, not whether the officer intended to seize the person in question. (*Id.*). Accordingly, defendant asserts the officers seized defendant by control—not force. (*Id.*, at 5–6). As such, defendant argues *Torres v. Madrid*, 141 S. Ct. 989 (2021), a seizure by force case, did not limit the holding of *Brower*, a seizure by control case, as Judge Roberts so interpreted it. (Doc. 46-1, at 5–6; Doc. 45, at 10–13).

Judge Roberts reached the question of whether the means the officers' intentionally applied constituted a seizure of defendant in the event the Court disagreed with his finding that no seizure occurred because the Kia was not blocked in. (Doc. 45, at 10). In other words, it was an alternative finding by Judge Roberts. The question of whether the officers seized defendant by means they intentionally applied is only relevant if the Court first finds defendant was seized. Here, the Court has already found defendant was not seized by the manner in which the officers' cars were parked. Thus, the Court does not reach this argument.

Accordingly, defendant's objection is **overruled**.

### D.     *Whether a Reasonable Person Would Have Felt Free to Leave*

Citing *Baude v. Leyshock*, 23 F. 4th 1065, 1071 (8th Cir. 2002), defendant argues a reasonable person in the position of either defendant or the Kia's driver would not have felt free to leave. (Doc. 46-1, at 7–8). In support, defendant cites five circumstances: (1) the way the officers parked their squad cars; (2) the officers arrived in marked squad cars identifying them as police; (3) at least one squad car had its flashing amber lights activated; (4) the officers were in full uniform; and (5) the officers were armed. (*Id.*).

In his Report and Recommendation, Judge Roberts found a reasonable person in the position of either defendant or the Kia's driver would have felt free to leave. (Doc. 45, at 13–15). First, Judge Roberts reasoned "without more, the mere arrival of

7

uniformed and armed police to a location in marked vehicles does not indicate to a reasonable person that he is detained." (*Id.*, at 13). Second, he explained "amber lights activated to warn traffic of an obstacle in the road do not signal a detention," (*id.*), and found only Officer Ehlers' squad car's amber lights were activated. (*Id.*, at 13 n.1). Third, viewing the officers' body camera footage and citing their testimony, Judge Roberts found the officers "used no show of force or intimidating movements, brandished no weapons, blocked only the vehicle's path forward, and made no threats or commands when parking or exiting their vehicles." (*Id.*, at 13–14). In this analysis, Judge Roberts relied on the Eighth Circuit Court of Appeals' recent opinion in *United States v. Lillich*, 6 F. 4th 869 (8th Cir. 2021), and the Supreme Court's opinion in *United States v. Drayton*, 536 U.S. 194 (2002).[4] (*Id.*, at 14–15). Comparing defendant's position to the defendant's position in *Lillich*, Judge Roberts reasoned that defendant "could have opened the passenger door where he was seated, which was in no way obstructed, and simply walked away," or that the Kia's driver could have backed up and drove away. (*Id.*).

Here, the Court agrees with Judge Roberts' finding that a reasonable person would have felt free to leave between the officers' arrival at Flirt's and when Officer Ehlers and Sergeant Gann approached the Kia to speak with defendant and the Kia's driver.[5]

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Lillich*, 6 F. 4th at 875 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). As the Eighth Circuit described in

---

[4] Defendant does not address *Lillich* or *Drayton* in his objections.

[5] The Court agrees with Judge Roberts' finding that although the time between these two events is short and would require defendant to make a quick decision, that fact does not create a seizure here. (*See* Doc. 45, at 8–9). Further, this short time frame does not affect the analysis of whether a reasonable person would have felt free to leave within that time.

8

*Lillich*, several factors inform the analysis of whether a reasonable person would feel free to leave under the circumstances. *Id*. at 876. Those factors include:

> officers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, [and] an officer's indication the person is the focus of a particular investigation.

*Id*. (quoting *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008)). Additionally, there is no seizure when there is "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice" to indicate the encounter was coercive or confrontational. *Drayton*, 536 U.S., at 204.

Considering the *Lillich* factors and the circumstances cited by defendant, the Court finds a reasonable person in the position of defendant or the Kia's driver would have felt free to leave.

The Court gives little weight to the officers' positioning. Because the Court finds the Kia was not blocked in, defendant's reliance on *Baude* is inapposite. In *Baude*, the Court found the plaintiff had alleged sufficient facts to indicate his seizure was unreasonable because he had shown that police "encircled all individuals in the area," even though some were compliant or even unrelated to the ongoing protests officers were purportedly trying to quell. 23 F. 4th at 1071. Further, "[o]fficers refused to allow anyone to leave voluntarily." *Id*. Here, as the Court has found, the manner in which officers parked their cars did not prevent the Kia's movement or defendant's movement, though it may have limited the vehicle's forward movement. As the court found in *Lillich*, limiting movement is not enough to effectuate a seizure. *See* 6 F. 4th at 876. Further, because no one tried to leave, officers did not refuse to allow the Kia's driver

9

to move the vehicle or refuse to allow defendant to leave the vehicle.  Indeed, when parking and getting out of their vehicles, officers made no commands to defendant or the Kia's driver.

The Court also gives little weight to the fact that officers arrived in marked squad cars and wore full uniforms.  "Officers are often required to wear uniforms."  *Drayton*, 536 U.S. at 204.  Officers on patrol, as Officer Ehlers and Sergeant Gann were here, are also generally required to drive marked squad cars.  If the Court were to give these circumstances significant weight, then any encounter between an identifiable officer and the public could be coercive.

Likewise, the Court gives little weight to the fact that the officers were armed. "That most law enforcement officers are armed is a fact well known to the public.  The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon."  *Id.* at 205.  Here, neither officer brandished a weapon.  When on duty, officers typically have on their person a service weapon.  Again, if the Court were to give this circumstance significant weight, then any interaction between an armed officer and the public could be coercive.

The Court gives more, but not much, weight to defendant's argument that at least one squad car had its flashing amber lights activated.  Judge Roberts found only Officer Ehlers' car had its flashing amber lights activated; Sergeant Gann's did not.  (*See* Doc. 45, at 13).  Reviewing the evidence, the Court agrees.  (Gov. Exs. 1 Ehlers' BWC 1:08:12–1:08:16; 2 Gann's BWC 1:08:16–1:08:24).  At the suppression hearing, Officer Ehlers testified that the flashing amber lights were a traffic warning device.  (Doc. 47, at 3).  Judge Roberts found "these lights differ significantly from red and blue flashing lights officers use when they are in pursuit or are attempting to effect a traffic stop." (Doc. 45, at 13 n.1).  Given that the Kia was already stopped, however, a reasonable person in defendant's position might not know the difference between the light colors and

10

their relative significance. Still, the Eighth Circuit has upheld a district court finding that a defendant was not seized when an officer "pulled his vehicle behind [the appellants'] parked car and activated his amber warning lights" under circumstances analogous to those here. *See United States v. Dockter*, 58 F.3d 1284, 1287 (8th Cir. 1995) (officer "did not block the appellants' vehicle or in any manner preclude them from leaving, he did not draw his weapon, and his tone of voice was inquisitive rather than coercive," though he was the only officer on scene).

The Court gives little weight to the remaining factors. *See Lillich*, 6 F. 4th at 876. Only two officers were present and one, Officer Ehlers, had walked away from the Kia to speak with the proprietor of Flirt's. It is undisputed that neither officer physically touched defendant or even spoke to him at this point. Likewise, neither officer indicated to defendant that he was the focus of a particular investigation. Finally, neither officer retained defendant's property. In sum, there is nothing to indicate that the officers acted in a way that was coercive or confrontational. *See Drayton*, 536 U.S., at 204.

Viewing these circumstances collectively, the Court finds that a reasonable person in the position of either defendant or the Kia's driver would have believed he was free to leave before Officer Ehlers approached the Kia. *See Lillich*, 6 F. 4th at 875. Confusion or lack of knowledge about the lights activated on Officer Ehlers' squad car is minimal considering the many other factors that weigh in favor of this finding.

Accordingly, defendant's objection is **overruled**.

11

## IV. CONCLUSION

For the reasons set forth above, defendant's Objections (Doc. 46) are **overruled**, Judge Roberts' Report and Recommendation (Doc. 45) is **adopted**, and defendant's Motion to Suppress (Doc. 35) is **denied**.

**IT IS SO ORDERED** this 15th day of August, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa